Williams v New York City Hous. Auth. (2020 NY Slip Op 03063)





Williams v New York City Hous. Auth.


2020 NY Slip Op 03063


Decided on May 28, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 28, 2020

Renwick, J.P., Mazzarelli, Moulton, González, JJ.


11137 311533/11 42063/12 83993/12

[*1]Carson Williams, Plaintiff-Appellant,
v
New York City Housing Authority, et al., Defendants-Respondents, Castle Hill Houses Community Center Inc., et al., Defendants. [And A Third-Party Action]. LIRO Program, et al., Second Third-Party Plaintiffs-Respondents, Corbex, Inc., Second Third-Party Defendant-Respondent-Appellant.


Wingate, Russotti, Shapiro & Halperin, LLP, New York (William P. Hepner of counsel), for appellant-respondent.
Lester Schwab Katz & Dwyer, LLP, New York (John Sandercock of counsel), for New York City Housing Authority, respondent.
Law Offices of Cheng and Associates, PLLC, Long Island City (Pui Chi Cheng of counsel), for LIRO Program and Construction Management, PE, PC, and Corbex, Inc., respondents.



Order, Supreme Court, Bronx County (Llinet M. Rosado, J.), entered on or about December 4, 2018, which, insofar as appealed from as limited by the briefs, granted the motions of defendants New York City Housing Authority (NYCHA) Liro Program and Construction Management, PE, P.C. (Liro), and third-party defendant Corbex, Inc. (Corbex) for summary judgment dismissing the complaint, unanimously modified, on the law, to the extent of denying NYCHA's motion and reinstating the complaint as against it, and otherwise affirmed, without costs.
This appeal involves a slip and fall in a hallway on the top floor of a building in the Castle Hill Houses in the Bronx, which was operated and managed by defendant NYCHA. On March 5, 2011, a Saturday, plaintiff Carson Williams visited the premises between noon and 1:00 p.m. to see a friend who lived there, Jennie Ruiz. Plaintiff slipped after stepping off the elevator. After he fell, plaintiff looked up, and saw that there was a crack in the ceiling from which water was slowly dripping, creating the accumulation that caused his fall. Photographs taken approximately two weeks after the accident showed that in one area on the ceiling, in the vicinity of where plaintiff fell, the paint was cracked and peeling, and discolored in one spot.
Plaintiff commenced this action against NYCHA and eventually against Liro and Corbex. Liro was the construction manager in charge of a major project involving the replacement of all of the roofs in the Castle Hill Houses, which commenced approximately one and one-half years before the accident and reached substantial completion a few weeks before the accident. Corbex [*2]was the general contractor for the roof replacement project. All three defendants answered and eventually moved for summary judgment.
In moving for summary judgment, NYCHA relied on a two-fold defense. First, it cited the fact that the roof project was finished right before the accident. Indeed, on February 16, 2011, approximately three weeks before plaintiff fell, the roof manufacturer issued a 20-year warranty for the roof atop the building where plaintiff fell. The warranty was issued after NYCHA performed a "cut test," witnessed by the roof manufacturer, to ensure the roof was, inter alia, watertight. NYCHA maintains that plaintiff presented no evidence that the roof replacement was done in a shoddy manner such that it would have leaked so soon after it passed the cut test, and that any peeling paint on the ceiling evidenced leaks that occurred before the roof replacement.
NYCHA's second line of defense was that it had no notice of the condition that caused the accident. In support it relied on the deposition testimony of George May, who was one of the caretakers at the building at the time of the accident, and Rodney Davis, who at the time was employed by NYCHA as the superintendent for the Castle Hill Houses. An employee ledger submitted into the record by NYCHA shows that May was assigned to work on the day of the accident. May testified at his deposition that he did not have an independent recollection of working on the day of the accident, or that an accident had occurred. However, he did testify as to what, pursuant to his usual Saturday work routine, he would have done on that day. That routine was to inspect the hallways twice, with the second inspection occurring from 11:30-11:45 a.m. May would have visited all of the floors, starting at the top (where plaintiff fell) and working his way down, cleaning hallways as necessary. If he had seen water leaking through the ceiling, he would have placed a bucket and "wet floor" sign, and notified his supervisor. However, May did not recall doing that at any time in 2010 or 2011.
Davis testified that if a resident called to complain about a leaking ceiling, a work order would be generated and a worker would be assigned to investigate. He further stated that the buildings were fully inspected on a monthly basis, and that the supervisor would fill out a sheet documenting the inspection results. NYCHA also submitted affidavits from an assistant superintendent at the Castle Hill Houses, as well as from an outside claims investigator, who averred that they searched the records for all complaints made of leaking ceilings on the roof and top two floors of the building in question during the
one-year period preceding the accident, and failed to turn up anything relevant.
Liro also moved for summary judgment, arguing that there was no evidence that the puddle on which plaintiff slipped was caused by a roof leak, and that the roof installed under its management passed waterproof testing prior to the accident. Liro submitted the deposition transcript of its senior project manager, who described in detail the roof replacement project, which encompassed demolishing the existing roof down to the concrete deck, pouring new concrete, laying down a vapor barrier, pouring a flood coat, installing flashing, and finally placing down a layer of gravel [FN1]. The project manager discussed the cut test and described the process whereby the guarantee was issued. He acknowledged that there was some work remaining after the cut test was performed, including the replacement of drains, but that such would not have impacted the previous determination that the roof was watertight.
In support of its own motion for summary judgment, Corbex submitted the transcript of the deposition of its construction supervisor, who also testified about the manner in which the roof replacement work was performed. He did not recall any work being performed after March 2, 2011 (three days before the accident), when drain covers were being installed. He further [*3]stated that he walked the 20th floor hallway each day to reach the roof, and never observed a leak in the ceiling. Furthermore, to his knowledge, Corbex never received any complaints about leaks inside the building after the project was completed.
In opposition to the motions, plaintiff submitted, inter alia, his own deposition transcript, as well as the statement of Ruiz, his friend who he was going to visit on the day of the accident. Ruiz's statement was sworn to in June 2011, a few months after the accident and several months before the action was commenced, not to mention years before the parties moved for summary judgment. Thus, it did not contain the action's caption. In addition, although notarized, the statement did not state that it was sworn to under penalty of perjury, and it was missing Ruiz's date of birth in a space left for that information. Ruiz averred that in the 19 years she resided in the building there were intermittent ceiling leaks, which were never repaired. She stated that she witnessed plaintiff's fall, and noticed that water which had dripped from the ceiling had accumulated in the area where he fell, a fact which she pointed out to plaintiff while he was still laying on the floor.
Plaintiff argued that the statement, along with the photographs of the peeling paint on the ceiling, constituted sufficient evidence that the water on the floor had come from a leak in the ceiling. Plaintiff further maintained that Liro and Corbex had failed to make out their prima facie showing of entitlement to summary judgment, because they failed to submit any facts establishing that the water did not come from a roof leak and that they did not have sufficient opportunity to notice the leak.
The motion court granted summary judgment to all the moving defendants. It found that NYCHA met its prima facie burden of showing lack of notice through May and Davis, who testified as to the protocol for cleaning and inspecting the premises; coupled with the monthly inspection reports, log books of complaints, and the affidavits confirming a lack of records of complaints. Regarding Liro and Corbex, the court observed that the roof was independently certified as watertight before the accident, and that no complaints were made by anyone that there were leaks in the roof. While acknowledging plaintiff's submission of photographs of paint peeling off the ceiling, the motion court found that the assertion that the peeling paint evidenced a leak was an assumption unsupported by the remainder of the record. Further, the court discounted Ruiz's affidavit, since it pre-dated the lawsuit, did not contain the action's caption, was not sworn under penalty of perjury, and was missing Ruiz's date of birth in the space left for that information. Thus, the court concluded, plaintiff failed to create a triable issue of fact, and defendants were entitled to dismissal of the action.
On appeal, NYCHA argues that it met its burden by submitting testimony that there was a set protocol for inspecting and cleaning the building in question, and that May, the caretaker, followed that protocol as a matter of habit, coupled with documentary evidence that May was on duty, and the written logs and other records containing no evidence of the defect. Indeed, a defendant landlord in a premises liability action may meet its prima facie burden on a summary judgment motion by establishing that it had a regular inspection and maintenance routine that it adhered to at the time the accident occurred (see Raghu v New York City Hous. Auth., 72 AD3d 480 [1st Dept 2010]). In Raghu, a janitor was permitted to rely on his past routine in testifying that he "remembered" that he checked the area where the plaintiff fell on the day of her accident, and did not observe the substance she claimed cause the fall. Similarly, in Pfeuffer v New York City Hous. Auth. (93 AD3d 470 [1st Dept 2012]), the Court found that the defendant met its burden by submitting a caretaker's affidavit stating his regular practice with respect to cleaning the staircases, as well as by submitting the superintendent's testimony confirming the caretaker's schedule.
Plaintiff argues that NYCHA did not meet its burden because its superintendent did not have an actual memory of the date in question. However, plaintiff cites to no authority holding that actual memory of inspecting the area where an accident occurred is required, as opposed to evidence of what a maintenance worker would have done, and evidence that a maintenance worker was working on the day in question.
Nevertheless, NYCHA's defense is premised on the notion that the water condition which caused plaintiff's fall was a transient one, and that the failure to notice it was excusable so long [*4]as NYCHA maintained its reasonable maintenance schedule. This ignores that plaintiff's theory is not that an active leak should have been noticed at a particular time, but rather that conditions that were suggestive of a permanent leak condition should have been noticed and addressed. Plaintiff created an issue of fact on this point by submitting the Ruiz affidavit and the photographs of the ceiling. Preliminarily, we do not reject the Ruiz notarized statement out of hand based on the perceived infirmities relied on by the motion court, such of the lack of a caption and the absence of a declaration that it was sworn to under penalty of perjury. These are technical errors that did not prejudice a substantial right of the defendants (CPLR 2001; see e.g. Moore v DL Peterson Trust, 172 AD3d 1058 [2d Dept 2019]). We similarly reject NYCHA's position that the affidavit is "stale." This action involves a static set of facts that have not changed since the day of the accident. The fact that the affidavit was prepared contemporaneously makes it more probative than had it been made at the time of the summary judgment motions, not less.
Substantively, the Ruiz affidavit established that leaks had existed in the ceiling for a long period of time before the accident, and that water from the ceiling had caused the accident. The photographs of the ceiling show discoloration and peeling paint that could be suggestive of a longstanding, "visible and apparent" condition — dripping water - that NYCHA's practices and procedures unreasonably failed to observe (Gordon v American Museum of Natural History, 67 NY2d 836, 837 [1986]). May's testimony that had he seen a leak he would have placed a bucket underneath it and notified his supervisor fails to account for why he or anybody at NYCHA did not notice the obvious condition of the ceiling, nor does the evidence that there were no complaints regarding leaks on the 20th floor explain why NYCHA's maintenance staff did not notice it.
Finally, the fact that NYCHA completed the roof replacement before the accident does not absolve it of liability as a landowner. NYCHA failed to establish, through an expert affidavit or otherwise, that any condition that may have caused the leaks discussed in the Ruiz affidavit was actually addressed by the project. However, because Liro and Corbex are not landowners but rather mere contractors hired by NYCHA to replace the roofs, they owed no direct duty to plaintiff, but could only be liable to the extent that they launched an instrument of harm, that plaintiff detrimentally relied on their performance of their respective contracts with NYCHA, or that they entirely replaced NYCHA's obligation to maintain the premises in a safe condition (see Espinal v Melville Snow Contrs., 98 NY2d 136, 140 [2002]). There is no evidence to suggest that either of those three conditions existed here. Accordingly, summary judgment was properly awarded to Liro and Corbex.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: MAY 28, 2020
CLERK



Footnotes

Footnote 1: Plaintiff argues that the roof was not finished before the accident because the gravel had not yet been laid when the accident happened. However, the record is not entirely clear as to when the gravel was placed. In any event, Liro's witness explained that the gravel is unrelated to making the roof watertight.